UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 8:20-cv-1592-SDM-AEP
   8:11-cr-269-SDM-AEP

LUIS LOPEZ
_____/

# ORDER

Lopez moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of one of his three convictions. Lopez is imprisoned for life on each conviction, specifically, (1) using interstate commerce in the commission of a murder-for-hire, as prohibited by 18 U.S.C. § 1958(a); (2) conspiring to use interstate commerce in the commission of a murder-for-hire, as prohibited by 18 U.S.C. § 1958(a); and (3) knowingly using and carrying a firearm in relation to a crime of violence resulting in death, as prohibited by 18 U.S.C. § 924(c)(1)(iii). Lopez challenges this last conviction.

## I. BACKGROUND

The following summary of the facts derives from the circuit court's decision on direct appeal. (Doc. 348 at 2–5) Christie Sehorne and her husband frequented a "swingers club," a place where patrons swapped partners and at which Mrs. Sehorne met Jerry Bottorff, who was employed at the club. After continuing to see each other, Mrs. Sehorne schemed with Bottorff to have her husband murdered so she could collect on a million-dollar life insurance policy. Bottorff approached Michael Garcia, a friend

of his from the club, about arranging the murder.[1] Garcia was once a high-ranking officer in the Latin Kings gang and was a career criminal with more than two dozen prior convictions. After agreeing to locate someone to undertake the contract, Garcia recruited Lopez (whom he knew from the gang) to commit the murder for $60,000. Knowing that the husband would arrive home after midnight, Garcia stood watch, Lopez hid in the carport, and after the husband exited his truck Lopez approached him and fatally shot him twice (once in the abdomen and once in the head) with a revolver provided by Garcia.

In 2014 the circuit court affirmed the convictions and sentences. (Doc. 348 in 11-cr-269) Lopez challenged his convictions and sentences in a motion under Section 2255 to vacate, which the district court denied on the merits in 2019. (Doc. 24 in 8:16-cv-1563-SDM-AEP) Lopez filed no appeal. In 2020 the circuit court granted (Doc. 26 in 11-cr-269) Lopez leave to file the present action, an authorized second or successive motion under Section 2255 that asserts relief under *United States v. Davis*, 139 S. Ct. 2319 (2019).

## II. AUTHORIZED SECOND OR SUCCESSIVE MOTION TO VACATE

The circuit court was charged with determining whether to grant Lopez leave to file a second or successive motion to vacate if he met a "threshold determination" of possible entitlement to relief. *Solomon v. United States*, 911 F.3d 1356, 1360 (11th Cir.) ("[W]e note that when this Court authorizes a federal prisoner to file a successive §

---

[1] Christie Sehorne (later Mrs. Bottorff), Jerry Bottorff, and Michael Garica pleaded guilty and are imprisoned for 236 months, life, and life, respectively. (Docs. 243, 244, and 285 in 11-cr-269)

- 2 -

2255 motion in the district court, that authorization is a threshold determination and narrowly circumscribed."), *abrogated on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019). The district court is charged with determining in the first instance whether relief is warranted, as *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1358 (11th Cir. 2007), explains:

> The statute puts on the district court the duty to make the initial decision about whether the petitioner meets the § 2244(b) requirements—not whether he has made out a prima facie case for meeting them, but whether he actually meets them. Given these circumstances, it would make no sense for the district court to treat our prima facie decision as something more than it is or to mine our order for factual ore to be assayed. The district court is to decide the § 2244(b)(1) & (2) issues fresh, or in the legal vernacular, *de novo*.

Lopez's singular claim is not a successive claim precluded by Section 2244(b)(1) and, based on the retroactive application of *Davis*, meets the requirements of Section 2244(b)(2)(A).

Lopez challenges his conviction charged in count three, that is, knowingly using and carrying a firearm in relation to a crime of violence resulting in death, as prohibited by 18 U.S.C. § 924(c)(1)(iii). This firearm conviction is based on Lopez's using or carring a firearm during a "crime of violence," which is defined in Section 924(c)(3) as "a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person . . . of another, or (B) that by its nature, involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense." The definition in part "(A)" is commonly called the "elements clause" or "use-of-force clause" and the definition in part "(B)" is commonly

called the "residual clause." Lopez contends that the firearm conviction is invalid under *Davis*, which holds that the residual clause in Section 924(c)(3)(B) is "unconstitutionally vague." Moreover, *Davis* applies retroactively. *In re: Wissam T. Hammoud*, 931 F.3d 1032, 1038, 1039 (11th Cir. 2019) ("We conclude that *Davis* . . . announced a new substantive rule[, and] we conclude that . . . the Supreme Court's holding[] in *Davis* . . . 'necessarily dictate[s]' that *Davis* has been 'made' retroactively applicable to criminal cases that became final before *Davis* was announced.").

Count three of the superseding indictment charges Lopez with violating Section 924(c) based on the crimes "alleged in Counts One and Two," specifically, the substantive crime of using interstate commerce in the commission of a murder-for-hire (count one) and the inchoate crime of conspiring to use interstate commerce in the commission of a murder-for-hire (count two). The jury was instructed that, to convict Lopez of the firearm charge under Section 924(c), they must find beyond a reasonable doubt that "the defendant committed the crime of violence charged in [either] Count One or Count Two of the Indictment." (Doc. 301 at 16 in 11-cr-269) (bolding added) The jury found Lopez guilty of the firearm charge in count three and the offenses charged in counts one and two, but the verdict does not delineate between counts one and two as the predicate offense for the firearm conviction. Lopez argues that, as a consequence, the record fails to show which predicate offense — the substantive offense in count one or the conspiracy offense in count two — is the basis for the Section 924(c) firearm conviction.

Lopez argues that a conspiracy conviction cannot support a Section 924(c) firearm conviction because a conspiracy fails to qualify as a crime of violence under the elements clause. Respondent argues that, although generally true regarding a conspiracy conviction, under *United States v. Runyan*, 995 F.3d 192, 204 (4th Cir. 2021), a "conspiracy to commit murder for hire where death results, in violation of § 1958(a), is a crime of violence under § 924(c)(3)'s force clause . . . ." Lopez counters (1) that this district court is governed by decisions from the Eleventh Circuit Court of Appeals, not the Fourth Circuit Court of Appeals, and (2) that under *United States v. Preacher*, 631 F.3d 1201, 1203 (11th Cir. 2011), a conviction under Section 1958(a) for a conspiracy to use interstate commerce to commit a murder-for-hire is not a "crime of violence," specifically, the offense requires no use, attempted use, or threatened use of physical force because "once the defendant uses an instrument of interstate commerce with the intent that a murder-for-hire be committed, the crime is completed." *See also Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) (Because "[n]either an agreement to commit a crime nor a defendant's knowledge of the conspiratorial goal necessitates the existence of a threat or attempt to use force[,] we conclude that conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence,' as defined by § 924(c)(3)(A)."). This district court must follow Eleventh Circuit precedent that a conviction for a conspiracy cannot support a Section 924(c) firearm conviction under the elements clause. Likewise, this district court must follow Eleventh Circuit precedent that this claim is subject to the usual defenses. *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) ("Should the district court conclude that Mr. Moss has

- 5 -

established the statutory requirements for filing a second or successive motion, it shall proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise. Any determination that the district court makes about whether Mr. Moss has satisfied the requirements for filing a second or successive motion, and any determination it makes on the merits, if it reaches the merits, is subject to review on appeal from a final judgment or order if an appeal is filed"). Although *Davis* applies retroactively, the United States may assert the usual defenses, including "waiver, procedural default, or the concurrent sentence doctrine[, and a]t this preliminary stage [of determining whether to authorize a second or successive motion to vacate], we offer no opinion as to whether these, or any other defense, might bar or defeat Cannon's *Davis* claim." *In re Cannon*, 931 F.3d 1236, 1245 (11th Cir. 2019). The United States correctly argues that procedural default bars review of Lopez's only claim.

### A. Procedural Default:

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013). On direct appeal Lopez challenged only the denial of his motions for both a judgment of acquittal and a new trial. (Doc. 348 in 11-cr-269) Consequently, Lopez procedurally defaulted the challenge he presents in this collateral review — the validity of his firearm conviction under count three. To overcome the procedural default, Lopez must "either (1) show cause to excuse the

default <u>and</u> actual prejudice from the claimed error, or (2) show that he is actually innocent of the . . . conviction." *Granda v. United States*, 990 F.3d 1272, 1286 (11th Cir. 2021) (underlining original).  Although not based on a murder-for-hire, *Granda* is remarkably similar to Lopez.

### 1. Cause:

In his reply Lopez correctly states the following regarding "unavailability" as a basis for "cause" (Doc. 13 at 2):

> A constitutional claim is not "reasonably available" if the Supreme Court decision establishing that claim: (1) explicitly overrules one of the Court's precedents; (2) overturns a longstanding and widespread practice to which the Court has not spoken "but which a near-unanimous body of lower court authority has expressly approved;" or (3) disapproves a practice that the Court "'arguably has sanctioned in prior cases.'" *Reed*, 468 U.S. at 17.[2]  "By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme Court] has ultimately adopted," and such a case will satisfy the cause requirement. *Id.*

Although Lopez contends that his "case fits all three categories," he primarily argues entitlement to "cause" under the first two categories. (Doc. 13 at 2–3)  However, *Granda* rejects reliance on the first two categories as "cause" to overcome the procedural default of a *Davis* claim and determines that "Granda's *Davis* claim fits most neatly into th[e] third category." *Granda*, 990 F.3d at 1287.  The third category "focus[es] on whether others were recognizing and raising the same or similar claims in

---

[2] *Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]e hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.").

the period preceding or concurrent with the petitioner's failure to raise his claim." *Pitts v. Cook*, 923 F.2d 1568, 1572 (11th Cir. 1991). *Granda* determines that, under the third category, "cause" is not shown because, since "[t]he tools existed to challenge myriad other portions of § 924(c) as vague[,] they existed to support a similar challenge to its residual clause[, and, consequently,] Granda cannot show cause to excuse his procedural default." 990 F.3d at 1288. Because he fails to show "cause," Lopez cannot meet his burden of showing both "cause" and "prejudice." Moreover, Lopez also cannot show "prejudice."

### 2. Prejudice:

"To prevail on a cause and prejudice theory, a petitioner must show 'actual prejudice.' 'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Fordham v. United States*, 706 F.3d at 1350 (quoting *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010) (brackets original). As *Granda* explains, Lopez must "show at least a 'substantial likelihood' that the jury actually relied on [the conspiracy] conviction to provide the predicate offense[, m]ore specifically, he must establish a substantially likelihood that the jury relied only on the [conspiracy] conviction . . . ." *Granda*, 990 F.3d at 1288 (bolding added). This "actual reliance" by the jury is necessary because "[i]f the absence of the invalid [conspiracy] predicate would not likely have changed the jury's decision to convict, Granda has not suffered actual prejudice." 990 F.3d at 1288.

- 8 -

Count one charged Lopez with using interstate commerce in a murder-for-hire, count two charged a conspiracy in that murder-for-hire, and count three charged knowingly using and carrying a firearm during a crime of violence. There was only one murder, which is the basis for all three counts, and both counts one and two were charged as predicate offenses to support the firearm charge in count three. As discussed above, because the conspiracy conviction in count two no longer qualifies as a crime of violence, to show prejudice Lopez must show that the jury relied on the conspiracy charge in count two — to the exclusion of the murder-for-hire charge in count one — as the predicate offense for count three. This he cannot do because both "of the § 924([c]) predicates are inextricably intertwined, arising out of the same [murder-for-hire] scheme." *Granda*, 990 F.3d at 1280. *See In re Pollard*, 931 F.3d 1318, 1321 (11th Cir. 2019) ("If the companion crime for which an applicant was convicted qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause, that applicant cannot show that there is a "reasonable likelihood" that he will benefit from the rule announced in *Davis*.") (denying leave to file a second or successive motion to vacate); *Foster v. United States*, 996 F.3d 1100, 1107 (11th Cir. 2021) ("As for the merits of Foster's claim, however, we conclude that Foster cannot prevail. The Hobbs Act conspiracy was inextricably intertwined with Foster's conspiracy and attempt to possess with intent to distribute cocaine (Counts 2 and 3), convictions Foster does not dispute are valid drug trafficking predicates for Counts 4 and 5. Accordingly, the inclusion of an invalid predicate offense — the Hobbs Act conspiracy — in his indictment and jury instructions was harmless.").

The remaining question is whether the murder-for-hire charged in count one qualifies under the elements clause as a "crime of violence," which requires having as "an element the use, attempted use, or threatened use of physical force against the person . . . of another." The Eleventh Circuit has not answered this question. But in granting Lopez leave to file a second or successive motion to vacate, the circuit court acknowledged that "[o]ur reasoning in *Thompson*[3] suggests that murder for hire qualifies as a crime of violence under § 924(c)(3)(A) because it necessarily involves the use of force capable of causing physical pain or injury, insofar as it must result in the death of a person. See 924 F.3d at 1158–59." (Doc. 387 at 8) In accord with the circuit court's suggestion, murder-for-hire under 18 U.S.C. § 1958(a) necessarily has as "an element the use, attempted use, or threatened use of physical force against the person . . . of another" because the goal of using interstate commerce in the circumstance is to murder a person.

As a consequence, the inextricably intertwined charges in counts one and two preclude Lopez from showing prejudice because he cannot show that the jury relied on the invalid predicate charge (the conspiracy charge in count two) to the exclusion of valid predicate charge (the murder-for-hire charge in count one). A movant under Section 2255 "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). "Where, as here, the evidence does

---

[3] *Thompson v. United States*, 924 F.3d 1153, 1158 (11th Cir. 2019) ("We would conclude that federal second-degree murder qualifies under § 924(c)'s elements clause. At a minimum, federal second-degree murder has as an element the killing of a human being with malice aforethought.").

not clearly explain what happened, . . . the party with the burden loses." *Beeman v. United States*, 871 F.3d 1215, 1225 (11th Cir. 2017) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). Lopez shows neither "cause" nor "prejudice."

### 3. Actual Innocence:

The term "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). *Accord Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001), and *Sawyer v. Holder*, 326 F.3d 1363, 1367 (11th Cir. 2003). Lopez recognizes that, under *Johnson*, 256 F.3d at 1171, "[t]o meet [the actual innocence] standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." (Doc. 13 at 3) (brackets original to Lopez). As discussed immediately above regarding his inability to show prejudice, Lopez cannot show that the jury would not have convicted him of the firearm charge in count three if they were advised that only the substantive offense in count one qualified as a predicate offense. Once again, *Granda*, 990 F.3d at 1292, supports this determination:

> But the same shortcoming that prevents Granda from showing actual prejudice — that the valid drug-trafficking and crime-of-violence predicates are inextricably intertwined with the invalid conspiracy-to-rob predicate — makes it impossible for Granda to show that his § 924(o) conviction was in fact based on the conspiracy-to-rob predicate.
>
> Since Granda can show neither cause, nor prejudice, nor actual innocence, he cannot overcome procedural default.

**B.  Merits Notwithstanding Procedural Default:**

Lopez would not prevail on the merits of his claim because his inability to show prejudice to overcome the procedural default likewise precludes his entitlement to relief on the merits.  Again, as *Granda*, 990 F.3d at 1292, explains, "[t]he inextricability of the alternative predicate crimes compels the conclusion that the error Granda complains about — instructing the jury on a constitutionally invalid predicate as one [of] several . . . potential alternative predicates — was harmless."  In a collateral proceeding, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.' " *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).  Moreover, the movant must show that the error "resulted in actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  As discussed above regarding his ability to show neither prejudice nor actual innocence to overcome procedural default, Lopez cannot show that the jury would not have convicted him of the firearm charge in count three if they were advised that only the substantive offense in count one qualified as a predicate offense.

Consequently, the district court has no "grave doubt," as *Ayala*, 576 U.S. at 267, requires, "about whether [the inclusion of the conspiracy charge as a possible predicate offense] had substantial and injurious effect or influence in determining the jury's verdict."  Lopez is entitled to no relief under Section 2255.

The motion to vacate (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Lopez and **CLOSE** this case.

## DENIAL OF BOTH
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Lopez is not entitled to a certificate of appealability ("COA").  A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Lopez must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Lopez is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Lopez must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 8, 2023.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE